```
                   IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF PENNSYLVANIA

                                      )
GROVER C. WILLIAMS,                   )
                                      )
            Plaintiff                 )
                                      )
       vs.                            )
                                      )       Civil Action No. 02-024
DON HAWK, CCC Director Gateway/       )
Braddock, JIM BRENHOLTS, Work         )       Judge Joy Flowers Conti/
Release Counselor Gateway/Braddock,   )       Magistrate Judge Amy
DENNIS RHODES, Director, Pa. D.O.C.   )       Reynolds Hay
Region 3 Contract Facility, and       )
WILLIAM MORSE, Pa. D.O.C. Contract    )
Facility Coordinator,                 )
                                      )
            Defendants                )
                                      )       Re:  Doc. 30
```

## REPORT AND RECOMMENDATION

I. RECOMMENDATION

It is respectfully recommended that Defendants' joint motion for judgment on the pleadings be granted in part and denied in part. It should be granted as to Defendants Rhodes and Morse as to all claims; it should be granted as to Defendants Hawk and Brenholts as to Plaintiff's retaliation claims but denied as to Plaintiff's Eighth Amendment deliberate indifference claims against Hawk and Brenholts.

II. REPORT

Grover Williams ("Plaintiff") filed a civil rights complaint (Doc. 3) pursuant to 42 U.S.C. § 1983 against four defendants. Defendant Hawk is the Director of the Community Corrections Center ("CCC") called Gateway Rehabilitation Center, where Plaintiff was placed pre-release. Defendant Brenholts is the

Work Release Counselor at the CCC.  Defendant Rhodes is the DOC Region 3 Director of Contract Facilities.  Gateway Rehabilitation Center is apparently one of the contract facilities in Region 3.  Defendant Morse is the DOC Contract Facility Coordinator for the CCC.

Plaintiff alleges essentially that Defendants Hawk and Brenholts interfered with his medical treatment in May - June 2003.  Plaintiff alleges essentially that Defendants Rhodes and Morris failed to properly investigate the grievance he filed against Defendants Hawk and Brenholts.

According to the complaint, on May 7, Plaintiff had surgery on a cyst located in his chest.  He was ordered by the operating physician to have the bandages changed on a daily basis by a nurse, which apparently required that he travel to the nurse to have them changed.  On May 8, 2003, Plaintiff was refused permission by Hawk and Brenholts to go to the nurse to have his bandages changed.  As a result, Plaintiff's bandages went unchanged for one week, from May 8 to May 14, 2003, when Plaintiff had a follow up appointment with the operating doctor who found the wound to be infected and prescribed antibiotics.  Plaintiff also alleges that on May 23, 2003, Hawk cancelled one of Plaintiff's medical appointments with a specialist, which resulted in a brief interruption in his medications as they ran

out.  Plaintiff alleges that Brenholts conspired with Hawks in all of these actions to deny Plaintiff his medical treatment.

Plaintiff also complains that Hawk utilized coercive tactics to get him to close a bank account that he shared with his daughter because the CCC rules apparently do not permit prisoners to maintain such an account.

Plaintiff filed a grievance on May 27, 2003, with Defendant Morse concerning the actions of Defendants Brenholts and Hawk. Plaintiff alleges that starting on June 2, 2003, a conspiracy began among all four of the defendants to retaliate against him for his filing the grievance, culminating in his termination from the CCC.  Doc. 3 at attached p. 2.

Plaintiff also complains that Defendants Rhodes and Morse exhibited deliberate indifference by their responses to his grievance and grievance appeal.  Specifically, Plaintiff alleges that Rhodes and Morse failed to properly investigate the grievance he filed against Brenholts and Hawk.  Plaintiff claims that Morse and Rhodes were aware of the actions of Defendants Brenholts and Hawk but failed to rectify their alleged violations of Plaintiff's Eighth Amendment rights.

In the grievance Plaintiff filed on May 27, 2003, which was included in the record, Plaintiff only names Defendants Brenholts and Hawk.  There is no mention of Defendants Morse or Rhodes.

Nor in the appeal of the grievance, which is also included in the record, is there any claim against Defendants Morse or Rhodes.

### A.  Applicable Legal Standards

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is treated under the same standard as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  <u>Regalbuto v. City of Philadelphia</u>, 937 F.Supp. 374, 376-77 (E.D.Pa.1995), *aff'd*, 91 F.3d 125 (3d Cir. 1996), *cert. denied*, 519 U.S. 982 (1996); <u>Constitution Bank v. DiMarco</u>, 815 F.Supp. 154, 157 (E.D. Pa. 1993).  Consequently, judgment under Rule 12(c) will be granted only where the moving party has clearly established that no relief could be granted under any set of facts that could be proved.  <u>Taj Mahal Travel v. Delta Airlines, Inc.</u>, 164 F.3d 186, 189 (3d Cir. 1998).  Additionally, the district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party.  <u>Regalbuto</u>, 937 F.Supp. at 377 (citing <u>Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.</u>, 11 F.3d 399, 406 (3d Cir.1993)).  In ruling on a Rule 12(c) motion, a court may consider documents attached to the complaint or pleadings.  <u>See</u>, <u>e.g.</u>, <u>Voest-Alpine Trading USA Corp. v. Bank of China</u>, 142 F.3d 887, 891 n.4 (5th Cir. 1998); <u>see also</u> Charles Alan Wright & Arthur R. Miller, 5C Federal Practice and Procedure: 3d  §1371 ("Because Rule 10(c)

incorporates into the pleadings all exhibits attached thereto and materials referred to, the district court can consider those documents in deciding a Rule 12(c) motion"). In addition, however, in considering a motion for judgment on the pleadings, a court is not limited to the pleadings themselves but may also consider facts of which the court may take judicial notice.  See, e.g., Oran v. Stafford, 226 F.3d 275, 289 (3d Cir. 2000) (court may take judicial notice of public disclosure documents filed with the SEC in disposing of a motion for judgment on the pleadings); Armbruster Products, Inc. v. Wilson, 35 F.3d 555, 1994 WL 489983 at p. *2 (4th Cir. 1994) (unpublished opinion) ("When ruling on a motion for judgment on the pleadings, the district court is not limited to the pleadings themselves, but may take judicial notice of additional facts where appropriate."); Southmark Prime Plus, L.P. v. Falzone, 776 F.Supp. 888, 892 (D.Del. 1991).  Moreover, "the consideration of the judicially noticed facts does not convert the motion into a Rule 56 motion for summary judgment.  It is only when the Court goes beyond the pleadings and judicially noticed facts that the Court must convert the motion and give both sides notice and an opportunity to supplement the factual record."  Id.

**B.   Discussion of Plaintiff's Claims**

    1.   Failure to Exhaust Administrative Remedies as to Rhodes and Morse

A prisoner may not bring a Section 1983 action until he has exhausted his administrative remedies. 42 U.S.C. § 1997(e)(a). There are three levels of the DOC grievance system, see DC-ADM 804, Doc. 31, Ex. 2, each of which must be utilized before it can be said that the prisoner has exhausted. Ahmed v. Sromovski, 103 F.Supp.2d 838, 843 (E.D.Pa. 2000).

Instantly, Plaintiff did not mention Defendants Rhodes and Morse in his first level grievance or in subsequent appeals. Indeed, Plaintiff concedes this fact. Doc. 37 at p. 4, ¶ 14. As such, he has failed to exhaust his administrative remedies as to Defendants Morse and Rhodes.

Moreover, because the time for filing any grievances against Defendants Morse and Rhodes has long passed,[1] the failure to exhaust his administrative remedies must be treated as a procedural default. See, e.g., Spruill v. Gillis, 372 F.3d 218,

---

[1] DOC policy establishes that "grievances must be submitted by the inmate for Initial Review to the Facility Grievance Coordinator within 15 working days after the event upon which the claim is based." Dkt. 31, Ex. 2, DC-ADM 804 § VI.A.1.h. It appears that this has been the policy since at least 1994 up to and including the present. See Davis v. Warman, 49 Fed.Appx. 365 (3d Cir. 2002)("See Commonwealth of Pennsylvania, Department of Corrections, Consolidated Inmate Grievance Review System, Policy No. DC-ADM 804 § VI.B.2. (Oct. 20, 1994) ('Grievances must be submitted for initial review ... within fifteen (15) days after the events upon which the claims are based.')"); Dkt. 31, Ex. 2, DC-ADM 804 § VI.A.1.h.

230 (3d Cir. 2004)(declaring that failure to abide by DOC's internal grievance procedures may result in procedurally defaulting a civil rights claim in federal court, reasoning that "[w]e believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. . . . Congress wanted to erect any barrier it could to suits by prisoners in federal court, and a procedural default rule surely reduces caseloads (even though it may be a blunt instrument for doing so)").

The text of the DOC policy applicable to Plaintiff herein is identical to the text of the DOC policy applicable in Spruill. Doc. 31, Ex. 2, DC-ADM 804 § VI.A.1.g. See also, Curry v. Scott, 249 F.3d 493, 505 (6th Cir. 2001) (exhaustion requires the inmate to file a grievance specifically against the defendant. "[A] prisoner [must] file a grievance against the person he ultimately seeks to sue ..."). Because Plaintiff cannot now go back and file a grievance against them, he has procedurally defaulted his claims against Defendants Rhodes and Morse. Accordingly, they are entitled to judgment on the pleadings.

(2) Eighth Amendment claim against Hawk and Brenholts

Plaintiff brings an Eighth Amendment claim for deliberate indifference against Hawk and Brenholts. These Defendants have moved for judgment of the pleadings asserting that Plaintiff failed to utilize all three steps of the grievance procedure.

Doc. 31 at 4-5. Defendants maintain that the pleadings conclusively demonstrate that Plaintiff failed to utilize the third and final step of the grievance procedure, namely, appeal to the DOC Secretary's Office of Inmate Grievances and Appeals. Specifically, Defendants contend that "[w]hile in filing his initial grievance and receiving an adverse determination, Mr. Williams did make some nominal effort to seek review of the determination, his efforts were not in conformity with the requirements of DC-ADM 804." Doc. 31 at 4. Defendants do not specify in what specific ways he failed to comply other than to say that he "fail[ed] to pursue final administrative review after the prison authority denied relief." Id. However Plaintiff points to what he indicates is his appeal to final review, namely Doc. 22, Ex. I, p. 10. The document which Plaintiff points to is actually a grievance rejection form sent from the facility Grievance Coordinator, Mr. Kohut. However, in the bottom of the form, apparently in Plaintiff's handwriting, is a heading entitled "Final Appeal B 6/11/03". Id. Plaintiff explains that

> When I received this document [i.e., the grievance rejection form from Mr. Kohut] I was in segregation. I couldn't get any blank paper, so [I] wrote my Final Appeal B on the form Mr. Kohut had sent.
> I didn't want to be denied because of my Appeal being untimely, so I used the only available paper I had.
> **On Exhibit I** [i.e., the grievance rejection sent by Mr. Kohut which Plaintiff used to file his final appeal to the DOC Secretary's office], **please note** the Secretary's Office of Inmate Grievances and Appeals is stamped at the top of the page. The date is June 16,

> 2003[.] Also, a person named Rogosky signed the form. There is an additional signature which is dated June 18, 2003. **Most Importantly**, is the date that is stamped showing that my Final Appeal B was not only received by the Secretary's Office of Inmate Grievances and Appeals, it was also logged on June 18, 2003.

Doc. 37 at 3. An examination of the exhibit confirms Plaintiff's description of the document.

It clearly appears that the appeal was received by the Secretary's Office of Inmate Grievances and Appeals as of June 16, 2003. The Defendants do not argue that this appeal was untimely, nor do they argue that Plaintiff failed to utilize the correct form or that he could not file an appeal using the reply form sent to him from Mr. Kohut. Nor do the DOC regulations appended to the Defendant's brief in support of their motion include any provisions requiring the use of a particular form. In light of this, it would appear that Plaintiff may have indeed filed a final appeal to the Secretary's Office in a timely manner.

At the very least, the Defendants have failed to show the court that this document, which was filed with the Secretary's Office of Inmate Grievances and Appeals, would not constitute "substantial compliance" with the DC-ADM 804 grievance policy requirement to file a third stage appeal. See, e.g., Nyuis v. Reno, 204 F.3d 65, 77-78 (3d Cir. 2000)("[w]ithout embellishing--for the case law in the area will have to develop--we note our understanding that compliance with the

9

administrative remedy scheme will be satisfactory if it is substantial."); Casey v. Smith, 71 Fed.Appx. 916 (3rd Cir. 2003); McCargo v. Guelich, 47 Fed.Appx. 96 (3d Cir. 2002); Ahmed v. Dragovich, 297 F.3d 201 (3d Cir. 2002); Boyd v. Dep't of Corrections, 32 Fed.Appx. 16 (3d Cir. 2002); Ghana v. Holland, 226 F.3d 175 (3d Cir. 2000). Accordingly, Defendants Hawk and Brenholts have failed to show under Rule 12(c) that no relief could be granted under any set of facts that could be proved. Taj Mahal Travel v. Delta Airlines, Inc., 164 F.3d 186, 189 (3d Cir. 1998). For it is possible that Plaintiff's filing did constitute substantial compliance with the ADM-804 policy.[2]

---

[2] To bolster their position, the Defendants attached to their brief in support of their motion an affidavit from a DOC official attesting that Plaintiff did not file any grievances to final review. First, it is not clear that this affidavit is properly considered under a Rule 12(c) motion for judgment on the pleadings for a variety of reasons, including that the affidavit was not part of a pleading. See Charles Alan Wright & Arthur R. Miller, 5C Federal Practice and Procedure: 3d §1371 ("the great majority of Rule 12(c) motions eventually are converted into motions for summary judgment. This is because it usually is necessary to introduce supporting **affidavits** and other written documents to prove that no triable issue of fact actually is in dispute.")(emphasis added); Barrett v. Negrete, 126 Fed.Appx. 816, 818 n.2 (9th Cir. 2005) ("Pleadings, as defined in the Federal Rules of Civil Procedure, are 'a complaint and an answer, a reply to a counterclaim denominated as such; an answer to a cross claim ... a third-party complaint ... and a third-party answer.' Fed.R.Civ.P. 7(a). Neither a motion nor a brief on a motion is a pleading."). Second, even if the court considered the affidavit, in the face of the date stamp from the Secretary's Office on the relevant document that Plaintiff points to as constituting his final appeal, there is sufficient doubt at this stage and so the court concludes that Defendants have not met their burden on this record to show entitlement to judgment on the pleadings.

### (3) <u>Plaintiff failed to establish retaliation</u>

Plaintiff alleges that all four Defendants retaliated against him for his filing of the May 27, 2003 grievance.

In order to prevail on a retaliation claim, a plaintiff must show: (1) that he engaged in constitutionally protected activity; (2) that he was subject to adverse actions by a state actor; and (3) the constitutionally protected activity was a substantial motivating factor in the state actor's decision to take adverse action. <u>Anderson v. Davila</u>, 125 F.3d 148, 161 (3d Cir. 1997)(*citing* <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274 (1977)).

It is Plaintiff's burden to show that retaliating against him for the exercise of his constitutional rights was a substantial motivating factor in the Defendants' adverse actions. <u>See</u> <u>Hannon v. Speck</u>, Civ. A. No. 87-3210, 1988 WL 131367, at *4 (E.D. Pa. Dec. 6, 1988) ("In bringing a §1983 action alleging such retaliation, an inmate faces a substantial burden in attempting to prove that the actual motivating factor ... was as he alleged.") (internal quotes and citation omitted), <u>aff'd</u>, 888 F.2d 1380 (3d Cir. 1989)(Table). Essentially, based on the facts of this case, Plaintiff must establish a causal nexus between his filing of a grievance on May 27, 2003, and his subsequent return to prison on June 9, 2003, when he was terminated from the CCC program. Typically, a plaintiff may meet this burden by

11

"produc[ing] direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999).

If the plaintiff demonstrates the three above cited elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). In the penal context, the state actor may rebut a plaintiff's claim by showing that his actions were motivated by legitimate penological objectives. Pratt v. Rowland, 65 F.3d 802 (9th Cir. 1995).

Here, the pleadings and documents attached thereto show that the Defendants would have terminated Plaintiff from the CCC regardless of the fact that he filed a grievance. See, e.g., Doc. 22, Ex. M. Exhibit M is the termination notice dated June 9, 2003. There were two basic reasons for terminating Plaintiff: (1) the failure to close the bank account and (2) an unexplained absence from the program. The termination notice recounts the fact that on June 2, 2003, Plaintiff told Defendants Hawk and Brenholts that his bank account was in fact closed. The Defendants asked him to show them proof of this. As of June 9, 2003, the account was not closed. Plaintiff contends that the termination notice's recounting of the facts is false and that he

told the Defendants he could not close out the account by phone as they had directed him to do. Doc. 22, Ex. M, p. 17, ¶ 2.

The second basis mentioned in the termination notice is Plaintiff's unexplained absence. On June 4, 2003, Plaintiff signed out of the CCC at 11:10 a.m. to go to a verified Doctor's appointment. Plaintiff called in at 3:45 p.m. from an unverifiable number and left a message on the monitor's phone. Plaintiff again called in at 4:50 p.m. from an unverifiable number but this time spoke with the monitor who instructed Plaintiff to call from the phone in the Doctor's office. Plaintiff did not call back and did not return to the facility until 6:34 p.m. Plaintiff concedes the June 4 unexplained absence is true. Doc. 22, Ex. M p. 17, ¶ 5. The Termination Notice states that Plaintiff was being terminated based on the above, which included not only the bank account problem but also the unexplained absence from the CCC for many hours and Plaintiff's refusal to comply with the monitor's direction to call from the Doctor's office. Although Plaintiff tries to downplay the significance of his unexplained absence as a minor infraction, Plaintiff has not convinced the Court that his failure to comply with the most rudimentary of requirements of the CCC does not form a good basis to determine him to be a poor risk and to be worthy of return to prison, especially given that unexplained absences go to the trustworthiness of the CCC

participant. In light of the foregoing, it is clear from the pleadings that the Defendants would have returned Plaintiff to prison even if he had not filed the grievance. See e.g., Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001) ("This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."). Accordingly, Defendants are entitled to motion for judgment on the pleadings based on the forgoing reasoning as to Plaintiff's retaliation claim.[3]

---

[3] While it is true that the Defendants did not seek to prevail in the retaliation claim based on the foregoing reasoning, a District Court has the inherent authority to grant judgment on the pleadings sua sponte so long as the party opposing the motion for judgment on the pleadings has notice and an opportunity to be heard concerning the proposed basis for the sua sponte grant. Cf. Canell v. Bradshaw, 97 F.3d 1458, at **5 (Table, Text available in Westlaw), (9th Cir. 1996) (unpublished)("A district court may grant summary judgment to a non-moving party sua sponte so long as the other party has had an adequate opportunity to address the relevant issues."). See also Celotex, 477 U.S. 317, 326 (1986) ("Our conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence."). Here, Plaintiff has notice and an opportunity to be heard via this report and the opportunity to file objections. Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998) ("Here, the Magistrate Judge's Memorandum and Recommendation placed Magouirk on notice that procedural default was a potentially dispositive issue with respect to three of his claims. Magouirk responded to the Magistrate Judge's sua sponte invocation of procedural default within the ten-day time period allowed for filing objections to the report. Thus, Magouirk was afforded both notice and a reasonable opportunity to oppose application of the procedural default doctrine in the district court."); Canady v. Baker, 142 F.3d 432 (Table), 1998 WL 123996, *1

Accordingly, the only remaining claim in the case is the Eighth Amendment claim against Defendants Hawk and Brenholts for their alleged deliberate indifference to Plaintiff's medical needs.

III. CONCLUSION

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated: 23 August, 2005

cc:   The Honorable Joy Flowers Conti
      United States District Judge

      Grover Williams
      7533 Bennett Street
      Pittsburgh, PA 15208

      Office of the Attorney General
      564 Forbes Avenue
      5th Floor, Manor Complex
      Pittsburgh, PA 15219

---

(6th Cir. 1998)(same).

15

James W. Harvey
333 Baldwin Road
5th Floor, Rosslyn Commons
Pittsburgh, PA 15205